**NOT FOR PUBLICATION** (Doc. Nos. 9, 12, 14)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| HINA SHAH, | : | |
| | : | |
| Plaintiff, | : | Civil No. 10-2015 (RBK/JS) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CENTURUM, INC., | : | |
| L-3 COMMUNICATIONS, INC., | : | |
| GLOBAL LINGUIST SOLUTIONS, LLC | : | |
| and JOHN DOES 1-10, sued | : | |
| individually and in their official capacities, | : | |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter arises out of alleged employment discrimination by a defense contractor in Iraq. The Complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1 et seq. Presently before the Court are the motions to dismiss filed by Defendants Centurum, Inc. ("Centurum"), L-3 Communications, Inc. ("L-3"), and Global Linguist Solutions, LLC ("Global"). Defendants Centurum and L-3 argue that venue is improper under Title VII's venue provision.[1] Plaintiff argues that venue is proper because the events giving rise to her claims occurred in New Jersey, and Defendants administer and maintain her employment records in New Jersey. For the following reasons, the Court finds that venue is improper in the District of New Jersey.

---

[1] Global moves to dismiss the Complaint for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) and failure to state a cause of action under Rule 12(b)(6). (Doc. No. 14).

1

I.      BACKGROUND

Hina Shah is a Muslim of South Asian descent. Shah commenced her employment with Centurum and/or L-3 in February 2007. Shah's duties involved screening foreign citizens at the United States military base in Nasiriyah, Iraq. Shortly after Shah commenced her employment, she experienced various forms of racial discrimination by employees of L-3 and/or Centurum. For example, Plaintiff alleges that Darrin Lekie, an L-3 Team Leader, told her that "all Muslims are suspicious because they are terrorists," and stated that Shah was "too suspicious to do [her] job." (Compl. ¶ 13). On another occasion, Lekie told Plaintiff that "colored people are illiterate," and remarked that "Pakistanis get their daughters married to old ass men." (Id. ¶ 13). Donald Davis, an L-3/Centurum Regional Manager, stated that "Mecca should be bombed to 'have millions of Muslims die.'" (Id. ¶ 21). On yet another occasion, when referring to a former employee, Davis said "Thank God we got rid of [him] because he was an Iraqi Muslim asshole." (Id. ¶ 28). Plaintiff does not allege that any employee of L-3, Centurum, or Global verbally harassed her outside of Iraq.

On several occasions, Plaintiff complained about the treatment she received during her employment in Iraq. Initially, Shah described Lekie's harassment to Russell Dobbs, the Deputy Program Manager of L-3, and told Dobbs that she wanted to resign as a result of Lekie's conduct. On September 15, 2007, Shah sent an email to Joseph Strohmier, an Assistant Project Manager and Recruiter at Centurum, informing Strohmier of the discriminatory treatment she received during her employment in Iraq, and the specific remarks made by Davis. In that email, Shah asked Strohmier to refrain from taking remedial action:

> I would like to let you know what's going on and I'm also forwarding an e-mail my co-worker wrote so you may see that it's not just me with these issues. Thank you for your help. <u>I would really appreciate if this e-mail and my issue stay between us. I will</u>

> e-mail you again [i]f things start getting worst then perhaps you can jump in.  Right now, I just want you to be aware of the problem.

(Def. Centurum's Mem. of Law in Supp. of Mot. to Dismiss Ex. A) (emphasis added).

Strohmier responded to Shah's email with the following email:

> Salam Hina,
>
> Try to work it out there through the chain of command.  If someone said that, that could be a discriminatory remark and certainly did not have much thought put into it.  Moreover, not sure we should have someone out there at a crucial time with that mind-frame working with Iraqi's [sic].  Perhaps the person was blowing off steam or something, and that should be considered.
>
> For sure, the person needs to be talked to and counseled about this statement.
>
> Work it through the chain.
>
> R

(Id.).  The signature block of Strohmier's email contained the following information:

> Joseph Strohmier
> Assistant Project Manager and Recruiter
> Intelligence Support Services, MNF-I
> Centurum Information Operations – Tampa
> 813-417-8588 cell
> 813-387-0888 work
> 813-207-5677 fax
> joseph.strohmier@centurum.com
> http://www.centurum.com

(Id.).

   In July 2008, Shah and her coworkers made an anonymous call to the L-3 Ethics Hotline to complain about the work environment in Iraq.  Shah alleges that contrary to L-3's stated policy that complaints to the L-3 Ethics Hotline remain anonymous, some of her coworkers and upper management employees at L-3 and/or Centurum knew that she complained of employee

3

discrimination. Thereafter, Plaintiff reported other discriminatory conduct to senior management from Global. Shah alleges that despite her numerous complaints to leaders at L-3, Centurum, and Global, she continued to experience racial and religious discrimination during her employment in Iraq.

Shah alleges that she was "constructively discharged from employment with L-3/Centurum" on March 20, 2009. (Compl. ¶ 55).

On April 19, 2010, Plaintiff filed the Complaint. The Complaint alleges discrimination on the basis of sex, religion, race, age, and national origin under Title VII, 42 U.S.C. § 1981, and the NJLAD. Centurum moved to dismiss the Complaint on October 12, 2010, and L-3 and Global moved to dismiss on October 13, 2010. The parties submitted their respective briefs and the motions are now ripe for review.

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(3) permits dismissal for improper venue. Fed. R. Civ. P. 12(b)(3). "In ruling upon the defendants' motion to dismiss for lack of proper venue, the Court 'accepts the plaintiffs['] well-pled allegations regarding venue as true, . . . draws all reasonable inferences from those allegations in the plaintiffs['] favor, and . . . resolves any factual conflicts in the plaintiffs['] favor . . . ." Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003). A court need not accept the plaintiff's well-pled factual allegations when they are contradicted by the defendant's affidavits. See AGA Shareholders, LLC v. CSK Auto, Inc., 467 F. Supp. 2d 834, 842 (N.D. Ill. 2006) ("When ruling on a motion to dismiss under 12(b)(3) . . . the court assumes the truth of the plaintiff's allegations unless they are contradicted by the defendant's affidavits."); MacCallum v. New York Yankees P'shp, 392 F. Supp. 2d 259, 262 (D. Conn. 2005) (noting that on a 12(b)(3) motion "[t]he court must take all allegations in

the complaint as true, unless contradicted by the defendant's affidavits."); 5B C. Wright & A. Miller, Federal Practice and Procedure § 1352, at 324 (3d ed. 2004) (same). Moreover, "a district court may examine facts outside the complaint to determine whether its venue is proper." 5B C. Wright & A. Miller, Federal Practice and Procedure § 1352, at 324 (3d ed. 2004); see Meteoro Amusement Corp. v. Six Flags, 267 F. Supp. 2d 263, 266 (N.D.N.Y. 2003) ("When deciding a motion to dismiss for improper venue, courts may consider materials outside the pleadings."); Nagel v. ADM Investor Servs., Inc., 995 F. Supp. 837, 843 (N.D. Ill. 1998) ("A court may also examine facts outside the complaint in order to determine whether venue is proper."). A defendant seeking dismissal or transfer for improper venue bears the burden of showing that venue is improper. See Myers v. Am. Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1982) (defendant moving to dismiss for improper venue pursuant to 12(b)(3) bears the burden of proving improper venue).

Venue in civil actions is generally governed by 28 U.S.C. § 1391. However, Title VII claims are governed by its venue provision. See 42 U.S.C. § 2000e-5(f)(3). Title VII's venue provision is "mandatory and well-settled, thereby rendering other general venue statutes inapplicable." Vincent v. Woods Servs., No. 08-1007, 2008 U.S. Dist. LEXIS 27781, at *2 (D.N.J. Apr. 4, 2008); see Colon v. Pitney Bowes Corp., No. 06-5016, 2007 U.S. Dist. LEXIS 9454, at *6-7 (D.N.J. Feb. 8, 2007). Consequently, "[a] civil action in which claims are asserted pursuant to Title VII . . . must be brought in the judicial district where (1) the alleged unlawful employment practice was committed, (2) the employment records relevant to such practice are maintained and administered, or (3) the plaintiff would have worked but for such practice." Colon, 2007 U.S. Dist. LEXIS 9454 at *6-7 (citing 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 12117(a)).

**III.    DISCUSSION**

Centurum and L-3 argue that venue is improper under Title VII's venue provision. Plaintiff argues that venue is proper because Centurum failed to take appropriate action to remedy the allegedly hostile work environment in Iraq after she complained to a Centurum employee in New Jersey.  To support that argument, Plaintiff offers a memorandum distributed by Centurum entitled "Centurum Standards of Business Conduct."  (Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss Ex. H).  Plaintiff claims that because the memorandum's letterhead contains a New Jersey address, the memorandum "prov[es] [that] workplace issues . . . were handled by Centurum, Inc. in New Jersey."  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, at 5). In addition, Plaintiff argues that Centurum maintains and administers her employment records in New Jersey.  To support that assertion, Plaintiff points to a Florida Unemployment Benefits Determination Form ("Benefits Form"), which contains the following address for Centurum Information Operations, Inc. ("CIO"):  12000 Lincoln Dr. West, Marlton, New Jersey 08053-3403.  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Ex. B).  Plaintiff claims that the address listed on the Benefits Form "is strong evidence showing [that her] records were in fact maintained and administered in New Jersey."  (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, at 6).

Centurum contends that Plaintiff's argument that the alleged discrimination occurred in New Jersey is incredible because Strohmier was located in Tampa, Florida when Plaintiff contacted him on September 15, 2007 to complain about the alleged discrimination in Iraq.  (Def. Centurum's Reply Br., at 5; Strohmier Decl. ¶ 8).  Centurum also offers an affidavit by Bonnita Rowe, the Human Resources and Security Administrator for CIO, to demonstrate that Plaintiff's employment records were located in Tampa, Florida.  (See Rowe Decl. ¶ 12; Strohmier Decl. ¶

8).

The Court finds that New Jersey is not the proper venue for litigating this matter. First, Plaintiff experienced no unlawful discrimination in the State of New Jersey. All of the allegedly discriminatory remarks made by L-3 and/or Centurum employees occurred in Iraq. The evidence also demonstrates that when Plaintiff emailed Strohmier on September 15, 2007, Strohmier was located in Tampa, Florida. The address listed in Strohmier's email signature block is proof that he worked in Tampa in September 2007. (Def. Centurum's Mem. of Law in Supp. of Mot. to Dismiss Ex. A). Moreover, Strohmier's Declaration provides additional evidence that he was located in Tampa in September 2007. In particular, Strohmier's Declaration states: "At all times relevant to this matter, I have been the Assistant Project Manager and Recruiter/Operations Specialist for Centurum Information Operations, Inc. ("CIO") in Tampa, Florida. I live in Florida and work for CIO in Tampa, Florida." (Strohmier Decl. ¶ 2).

Plaintiff's argument that because the letterhead on a Centurum policy memorandum listed a New Jersey address, the hotline described in the memorandum was located in New Jersey is unavailing on its face. The fact that a memorandum outlining unethical business practices and providing employees with a complaint hotline contains a letterhead with a New Jersey address, does not mean that the employee hotline is actually <u>located</u> in New Jersey. At most, the address listed on the letterhead is evidence that the letter was <u>drafted</u> in New Jersey. Furthermore, Plaintiff's argument that Centurum discriminated against her in New Jersey by failing to respond to her complaint to Strohmier is belied by her own email on September 15, 2007. Plaintiff's email to Strohmier states: "I would really appreciate if this e-mail and my issue stay between us. I will e-mail you again [i]f things start getting worst then perhaps you can jump in. Right now, I just want you to be aware of the problem." (Def. Centurum's Mem. of Law in Supp. of Mot. to

Dismiss Ex. A). Plaintiff's specific instructions to Strohmier undermine her claim that Centurum engaged in any unlawful conduct by failing to take action in New Jersey after she complained of the allegedly unlawful activity in Iraq.

Second, the evidence demonstrates that Plaintiff's employment records were stored and maintained in Tampa, Florida. Plaintiff's reliance on the Benefits Form is misplaced. At most, the Benefits Form demonstrates that Centurum has an office located in Marlton, New Jersey. However, the fact that Centurum maintains an office in Marlton, New Jersey does not prove that Centurum stored Plaintiff's employment records in New Jersey. The evidence is contrary. The Declaration of Bonnita Rowe, the Human Resources and Security Administrator for CIO states: "Ms. Shah's employment records are located at CIO's Tampa, Florida office." (Rowe Decl. ¶ 12). Rowe's testimony provides sufficient proof that Plaintiff's records are stored and maintained in Tampa, Florida, not New Jersey. (Def. Centurum's Mot. to Dismiss Ex. B, Florida Unemployment Benefits Determination).

Finally, Plaintiffs do not argue, and there is no evidence, that but for the allegedly unlawful behavior of certain Centurum employees, Plaintiff would have commenced her employment in New Jersey.

Therefore, the Court finds that Defendants satisfied their burden of proving that venue is improper under Title VII.[2] As a result, the Court will transfer this civil action to the U.S. District Court for the Middle District of Florida.[3]

---

[2] Because the Court finds that venue is improper with respect to Plaintiff's claims against Centurum and L-3, the Court will also dismiss Global's motion to dismiss for insufficient service of process and failure to state a cause of action as moot. See Hango v. Immigration Enforcement Agent Atkinson, No. 04-3286, 2008 WL 4326997, at *3-4 (D.N.J. Sept. 17, 2008) (finding plaintiff's motion to dismiss under 12(b)(6) moot after granting defendants' motion to transfer venue).

[3] Pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Pursuant to Title VII's venue provision, 42 U.S.C. § 2000e-5(f)(3), the evidence indicates that

IV.	CONCLUSION

        For the foregoing reasons, the Court finds that venue is improper in the U.S. District Court for the District of New Jersey.  Accordingly, the Court will transfer venue to the U.S. District Court for the Middle District of Florida.  An appropriate order shall issue today.


Date:  4/20/2011                                          /s/ Robert B. Kugler  
                                                                                    ROBERT B. KUGLER  
                                                                                    United States District Judge

---

the Middle District of Florida is the proper venue for adjudicating this dispute.  First, as noted in this Opinion, the Middle District of Florida is the district where CIO maintains and administers Plaintiff's employment records. Second, Plaintiff sent her email on September 15, 2007 to a CIO employee in Tampa, Florida.  Third, Centurum and CIO filed a lawsuit for declaratory relief in the Middle District of Florida, Centurum, Inc. et al. v. Hina Shah, No. 10-368 (M.D. Fla. filed Feb. 3, 2010), based on the same facts and circumstances that gave rise to this lawsuit. Thus, it is in the interest of justice to transfer this action to Florida.